```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CARLTON EVANS,

                        Petitioner,      07 Civ. 6686 (RJS)(DFE)

        - against -                      REPORT AND RECOMMENDATION
                                         TO JUDGE SULLIVAN
ROBERT ERCOLE, Superintendent,

                        Respondent.
------------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

    Carlton Evans brings this *pro se* habeas petition to challenge his conviction for two rapes, after a 2003 jury trial before Justice James Yates in Supreme Court, New York County. Evans was sentenced, as a second felony offender, to two consecutive prison terms of 20 years each.

    Evans was represented at trial by Neville Mitchell. On direct appeal, he was represented by Steven R. Berko of The Legal Aid Society.

    The conviction and the sentence were affirmed. *People v. Evans*, 25 A.D.3d 328, 806 N.Y.S.2d 210 (1st Dept. 2006), *leave denied*, 6 N.Y.3d 833, 814 N.Y.S.2d 81 (Mar. 23, 2006). Upon the expiration of 90 days in which a petition for certiorari could have been filed, the conviction became final on June 21, 2006.

    Evans's habeas petition is dated June 20, 2007, barely within the one-year statute of limitations. It was received by our Court's Pro Se Office on Monday, June 25, 2007.

    By order signed November 6, 2007, Judge Sullivan granted respondent's motion to file the transcripts and exhibits under seal because they identify the rape victims by their full names. On November 14, 2007, Assistant Attorney General Alyson J. Gill filed a memorandum of law which refers to the victims by their initials and therefore is not under seal. Under seal, she filed the transcripts and her declaration annexing Exhibits A through G. (I will refer to certain of those exhibits as "Exh. ___.") She served Evans with a copy of her memorandum of law, her declaration, and Exhibits A through G.

    On January 10, 2008, Evans served an affirmation/traverse

which annexed a seven-page reply memorandum of law.  By letter dated March 2, 2008, Evans requested Judge Sullivan to stay this habeas proceeding so that he might "further exhaust my claims in the state court."  By order signed March 6, 2008, Judge Sullivan denied that request.  On January 7, 2009, he referred this case to me for a report and recommendation.

For the following reasons, I recommend that Judge Sullivan deny Evans's habeas petition.

The petition presents the same two points that were presented to the Appellate Division in The Legal Aid Society's brief (Exh. B).  At pages 7-19, that brief described the trial evidence, but there is no need to discuss it here.  There is also no need for an evidentiary hearing.  I will address the two points in reverse order.

Point II (Exh. B, pp. 29-30) argued that the sentences were excessive and should be reduced in the interest of justice.  This point was addressed to the Appellate Division's special power to reduce a sentence.  The Appellate Division considered Point II and wrote:  "We perceive no basis for reducing the sentence."  (Exh. D.)

Point II did not and does not present any federal claim.  In our Court, AAG Gill's memorandum, at pages 17-18, noted that Justice Yates's sentences were less than the maximums set by the New York legislature.  Evans does not dispute this.  Also, AAG Gill cited *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992), in which the Second Circuit wrote:  "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  Evans does not respond to the citation of *White*.

Nevertheless, in his reply memorandum, Evans devotes four pages to Point II.  He asserts that his victims were engaged in prostitution, even though he seems to acknowledge that the guilty verdict rejected that improbable assertion.  He goes on to emphasize New York's Criminal Procedure Law §470.15(6)(b), which gave the Appellate Division the discretionary power to reduce a sentence if it finds the sentence "was unduly harsh or severe."  He says this statute means that the legislature "has already spoken on this matter."  But he does not claim that the legislature of New York, or of any other state, has indicated that a sentence of 40 years would be grossly disproportionate to the crime of raping two separate victims.  See *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680 (1991), where the Supreme Court upheld a sentence of life without parole for the crime of

possession of 650 grams of cocaine.

I now proceed to Point I.  Point I (Exh. B, pp. 2-7, 20-29) was an attempt to extend the reach of *People v. Antommarchi*, 80 N.Y.2d 247, 590 N.Y.S.2d 33 (1992).  *Antommarchi* held, as a matter of New York law, that a defendant is entitled, absent a waiver, to be present at discussions, for example at sidebar or in the robing room, involving prospective jurors' backgrounds and their ability to weigh the evidence objectively.  As a matter of federal habeas law, the district courts in our Circuit are governed by *Cohen v. Senkowski*, 290 F.3d 485 (2d Cir. 2002).  In *Cohen*, the Second Circuit denied habeas.  At page 489, it said: "We now hold explicitly ... that pre-screening of prospective jurors is a material stage of trial at which the defendant has a constitutional right to be present."  On the other hand, at pages 491-93, the Second Circuit found an implied waiver by Cohen, even though the facts supporting waiver were much weaker in Cohen's case than they are in Evans's case.  The Second Circuit wrote: "Cohen did not expressly waive his right to be present at the pre-screening procedure. .... Affidavits submitted by Cohen and his trial attorney attest that Cohen was not told by counsel of his right to attend the pre-screening, and it is not disputed that the trial court never informed [Cohen] of this right.  The trial judge did announce in open court his intention to conduct the pre-screening, ....  The trial judge also described the nature of the procedure ....  We have held that 'only minimal knowledge on the part of the accused is required when waiver is implied from conduct.' ....  Because Cohen was fully aware of the pre-screening procedure but did not object to it nor ask to attend, and because his counsel was present throughout, Cohen waived his right to be present for the procedure."

In the case at bar, the facts supporting waiver were very strong, because Evans expressly waived his right to be present.  At the end of today's report, I am annexing pages 20-22 of the 9/30/03 transcript before Justice Berkman and Exh. A, which is the written waiver signed that day by Evans, and by his attorney, and by Justice Berkman.  The waiver said (with my emphasis now added):  "The above-named defendant has been advised of his right to be present at sidebar conferences during the course of this trial, **including the jury selection procedure**.  After consulting with his counsel, the defendant hereby waives his right to be present at such conferences and agrees that he will remain in his seat at the defense table during **all such** sidebar conferences."

Before Justice Berkman, a panel of prospective jurors took an oath to answer questions.  A scheduling problem arose and therefore, before any prospective juror was chosen, Justice

Berkman discharged the panel and the trial was reassigned to Justice Yates.  (Exh. B, pp. 2-3.)  On the very next morning, Justice Yates said "we are about to start jury selection" (10/1/03 Tr. 2) and the following colloquy ensued:

>THE COURT:  ... I understand that there was a panel sworn in front of Judge Berkman, but there were no jurors actually selected and sworn.  Is that correct?
>
>MS. BASHFORD:  That is correct.
>
>MR. MITCHELL:  That's correct.
>
>THE COURT:  Just so it's clear, do you consent to my bringing in a new panel and starting fresh all over again, both sides?
>
>MS. BASHFORD:  Yes.
>
>MR. MITCHELL:  Yes.

(10/1/03 Tr. 3-4.)  Two pages later, the new panel of prospective jurors entered the courtroom.  At Tr. 6-18, Justice Yates spoke to them in Evans's presence.  The judge made it crystal clear that he was going to hear any juror's problems in the robing room ("the back room") rather than at sidebar.  Tr. 10:  "If your answer is yes to any of these questions then we should discuss it .... Now, for that purpose what we are going to do is go into the back room ....  This will be your best chance to talk to us privately instead of speaking in front of the full panel, ...."  At Tr. 16, the judge apparently asked for a show of hands:  "How many need to talk to me?  Okay, it's 11 o'clock.  It's going to take over an hour."

At the end of today's report, I am annexing pages 18-19 of the 10/1/03 transcript.  They show as follows.  All of the prospective jurors were temporarily excused from the courtroom. Justice Yates then had following colloquy with Evans (with my emphasis added):

>THE COURT: Mr. Evans, we are about to screen some of the jurors.  We are going to ask them if they can serve, whether they can be fair.  ....
>**You have a right to be present** during any stage of the proceeding that you want to be present at.  That includes **right now.**
>**If you want to be there and listen to what**

**people say**, what potential jurors say about whether they can be fair or not, whether they're available or not, **you can do that, it's your choice.**
     On the other hand, Mr. Mitchell has indicated that at this stage of the proceeding it's not necessary for you to be here, ... if you want to waive your presence.
     In other words, you'll come back up when we start the full-blown jury selection but you won't be here to listen to people who have excuses they want to talk about.
     Have you talked about all this with Mr. Mitchell?

     THE DEFENDANT:  **Yes.**

     THE COURT:  What's your decision?

     THE DEFENDANT:  **I don't need to be back here for that.**

     THE COURT:  Okay.  So, **you're waiving your presence** for this part of the proceeding and we'll bring you up for all the rest?

     THE DEFENDANT:  **Yes.**

     THE COURT:  Okay.

     (Defendant exits.)

     In Evans's absence, Justice Yates and the attorneys met with prospective jurors, of whom 21 were excused.  (10/1/03 Tr. 19-104.)  After the luncheon recess, Evans was present in court for the remainder of the jury selection process.  (Tr. 105-68.)

     Point I of the appellate attorney's brief turned on a single erroneous assertion, which was expressed at two pages.  At Exh. B, p. 24, Mr. Berko wrote:  "Unlike Justice Berkman, however, Justice Yates failed to explain to appellant that even if he decided not to attend the conferences, he had the unequivocal right to change his mind."  At Exh. B, p. 28, Mr. Berko wrote that Justice Yates "withheld the right to revoke his [Evans's] waiver."

     On the contrary, Justice Yates gave Evans an opportunity to revoke the written waiver that Evans had signed the day before; Evans declined that opportunity and reaffirmed that he was waiving his presence, and then he left the courtroom.  (Tr. 18-

19, quoted above.)  Evans knew that Justice Yates would immediately question all of the jurors who had problems (Tr. 18), and that the questioning was "going to take over an hour" (Tr. 16).  Evans did not say that he was uncomfortable with the decision he made at Tr. 19 - - not when he returned to the courtroom at Tr. 105, and not at any time during the trial.  If he had complained to the judge, it is unclear how the judge might have responded.  But New York law was clear that the trial judge has "broad discretion" to refuse to rescind an *Antommarchi* waiver even if a defendant does say that he has changed his mind. *People v. Williams*, 92 N.Y.2d 993, 995-96, 684 N.Y.S.2d 163, 165 (Ct. App. 1998).

Accordingly, it was entirely reasonable when the Appellate Division affirmed Evans's conviction and wrote:

> Defendant made a valid waiver of his right to be present at sidebar conferences during jury selection (*see People v. Mitchell,* 80 N.Y.2d 519, 591 N.Y.S.2d 990, 606 N.E.2d 1381 [1992]).  As the result of a scheduling problem that necessitated the recommencement of jury selection, two Justices advised defendant of his rights under *People v. Antommarchi,* 80 N.Y.2d 247, 590 N.Y.S.2d 33, 604 N.E.2d 95 [1992] on successive days.  Each of these colloquies was thorough and complete, and the only difference between them was that the first colloquy contained an implication that the waiver was revocable, while the second contained no such implication.  We reject defendant's argument that the omission from the second colloquy of any mention of revocation rendered the waiver invalid.  The two colloquies should be viewed as a whole (*cf. People v. Peterson*, 273 A.D.2d 88, 89, 709 N.Y.S.2d 540 [2000] [waiver of right to counsel viewed in light of prior colloquies on risks of self-representation]).  In any event, defendant did not have the right to rescind his *Antommarchi* waiver (*People v. Williams,* 92 N.Y.2d 993, 684 N.Y.S.2d 163, 706 N.E.2d 1187 [1998]), and never sought to do so.

*People v. Evans*, 25 A.D.3d 328, 806 N.Y.S.2d at 210.

Even in our Court, Evans does not claim that he actually wanted to rescind his waiver at any time during the trial.  His reply memorandum of law, at page 1, merely says that "the defendant **could** have felt totally uncomfortable with this second waiver."  (Emphasis added.)  At page 2, the reply memorandum says:  "The same way a waiver can be expressed by the

-6-

defendant[']s conduct (Cohen v. Senkowski 290 F.3d 485 ...)[,] [t]hen likewise, a non-waiver can be expressed by the defendant[']s conduct ...." But there was no conduct by Evans that expressed any desire to be present during the pre-screening of the potential jurors.

### CONCLUSION AND RECOMMENDATION

For the reasons set forth above, I recommend that Judge Sullivan deny the habeas petition of Carlton Evans.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 14 calendar days after being served with a copy **(i.e., no later than December 31, 2009)**, by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Richard J. Sullivan, U.S.D.J. at Room 640, 500 Pearl Street, New York, NY 10007 and (c) to me at Room 1360, 500 Pearl Street, New York, NY 10007. Failure to file objections within 14 calendar days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(e). **Any request for an extension of time must be addressed to Judge Sullivan, at the address shown on the next page.**

*/s/ Douglas F. Eaton*
DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007

Dated:   New York, New York
         December 11, 2009

Copies of this Report and Recommendation, and of 9/30/03 Tr. 20-22, and of Exh. A (the 9/30/03 waiver signed by Evans), and of 10/1/03 Tr. 1, 18-19, are being sent by mail to:

Carlton Evans **(LEGAL MAIL)**
01-R-5458
Green Haven Correctional Facility
Route 216, P.O. Box 4000
Stormville, NY 12582-0010

Alyson J. Gill, Esq.
Assistant Attorney General
State of New York
120 Broadway
New York, NY 10271

Hon. Richard J. Sullivan
United States District Judge
500 Pearl Street, Room 640
New York, NY 10007

1   THE COURT: Well, Monday is a Jewish
2   holiday.
3   MS. BASHFORD: Best guess is about a day
4   and a half of actual testimony.
5   THE COURT: I hate doing a trial that's
6   piecemeal like this. What can I do?
7   MS. BASHFORD: Judge, do you still have
8   the photo array?
9   MR. MITCHELL: We're ready for trial.
10   THE COURT: The one remaining issue then
11   would be Antommarchi. Have you discussed that
12   issue with your client?
13   MR. MITCHELL: I'm do it right now Judge.
14   (Whereupon, Mr. Mitchell confers with the
15   defendant)
16   MR. MITCHELL: I've discussed my
17   client's Antommarchi rights. He's indicated he
18   will waive that.
19   THE COURT: Mr. Evans, I need to make a
20   record in this regard.
21   You have the right to be present in
22   every part of the trial, and that includes if a
23   juror asks to step up to the bench and discuss
24   something privately with me. I usually try to
25   discourage that. But in sex crimes cases,

sometimes it's difficult because people--some people don't like to say, oh, I've been a victim, or my sister, or my aunt, or my mother. Whatever. They don't like to say that in front of everybody. So there may be a situation like that in this case. If you're present, you can see the way they say things, not only what they have said. And that might be important in terms of your making a decision as to whether or not you want that person as a judge of the facts of your case.

On the other hand, there are many who believe that the jurors might be a little bit more forthcoming. If the defendant isn't there, sometimes they get a little inhibited if the person accused of a crime is present there. So that's why a lot of lawyers will recommend to their client that they not come up because they -- whatever. Understanding that, sir, what is it that you wish to do?

THE DEFENDANT: I would like the lawyer.

THE COURT: Mr. Evans I want you to understand, sir, that if you decided you're uncomfortable with that decision later on during

the course of jury selection, just tell Mr. Mitchell. And if he didn't tell me immediately, then tell a court officer.

THE DEFENDANT: All right.

THE COURT: I don't want you dealing with that when you're uncomfortable with it. I don't know, Mr. Evans, because this is the first I'm seeing of this case, what discussion Judge White had with you with regard to disposition in this case. You are charged with two-- excuse me, three Class B violent felonies, two counts of rape, I believe, and one of sodomy. These are consecutive counts, which means that the maximum on a B violent is twenty-five years. And since they're consecutive counts, what you're facing is up to seventy-five years in state prison.

The People are recommending twenty-five years in this case, which I understand is a lot of time. And frankly, I have no indication that Judge White ever offered anything other than what the People are offering here, and I'm not certainly about to offer less than she did.

I just wanted to be clear here. Not

WAIVER OF RIGHT TO BE PRESENT
AT SIDEBAR CONFERENCES

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,      :

           vs.                              :   Indictment No.

CARLTON EVANS , Defendant.                :   4326/02

------------------------------------------X

    The above-named defendant has been advised of his right to be present at sidebar conferences during the course of this trial, including the jury selection procedure. After consulting with his counsel, the defendant hereby waives his right to be present at such conferences and agrees that he will remain in his seat at the defense table during all such sidebar conferences.

_____
Defendant

_____
Attorney for Defendant

Approved
and So Ordered

_____
Justice of the Supreme Court
of the State of New York

Dated: New York, N.Y., September 30, 2003

```
                                                                    1

 1   SUPREME COURT           NEW YORK COUNTY
     TRIAL TERM              PART  31
 2   ------------------------------------------x
     THE PEOPLE OF THE STATE OF NEW YORK : INDICTMENT #
 3                                       : 4326/02
                                         :
 4                                       :
                  AGAINST                : CHARGE
 5                                       : Rape 1
                                         :
 6   CARLTON EVANS,                      :
                                         :
 7                                       :
                                         :
 8                  Defendant            :
     ------------------------------------------x Voir Dire
 9
10                           100 Centre Street
                             New York, New York 10013
11                           October 1, 2003

12

13   B E F O R E:

14        HONORABLE JAMES YATES,
              JUSTICE OF THE SUPREME COURT
15

16
     APPEARANCES:
17
     For the People:         ROBERT MORGENTHAU, ESQ.
18                           New York County
                             District Attorney
19                           One Hogan Place
                             New York, New York 10013
20                           By:  Martha Bashford,
                                  Charles Curlett,
21                           Assistants District Attorney

22
     For the Defendant:
23
                             Neville Mitchell, Esq.
                             225 Broadway
24                           New York, N.Y.

25                           Lynda A. Castellano,
                             Senior Court Reporter


                  Lynda A. Castellano, SCR
```

Voir Dire

1   You can step out.
2   THE COURT: All right, thank you.
3   We are going to go in the back and
4   the officers are going to call you in.
5   When you come back, please have your
6   ballot ready because we look at your ballot
7   when we start talking to you.
8   (Jurors exit).
9   THE COURT: Mr. Evans, we are about
10  to screen some of the jurors. We are going to
11  ask them if they can serve, whether they can be
12  fair. That's not going to be final jury
13  selection. I'm going to excuse some people and
14  not excuse some people. I'll listen to your
15  lawyer and listen to the People, then we'll go
16  back to the jury room and we'll do jury
17  selection by your lawyer and the People.
18  You have a right to be present during
19  any stage of the proceeding that you want to be
20  present at. That includes right now.
21  If you want to be there and listen to
22  what people say, what potential jurors say
23  about whether they can be fair or not, whether
24  they're available or not, you can do that, it's
25  your choice.

Lynda A. Castellano, SCR

Voir Dire

On the other hand, Mr. Mitchell has indicated that at this stage of the proceeding it's not necessary for you to be here, and if you want to waive your presence.

In other words, you'll come back up when we start the full-blown jury selection but you won't be here to listen to people who have excuses they want to talk about.

Have you talked about all this with Mr. Mitchell?

THE DEFENDANT: Yes.

THE COURT: What's your decision?

THE DEFENDANT: I don't need to be back here for that.

THE COURT: Okay. So, you're waiving your presence for this part of the proceeding and we'll bring you up for all the rest?

THE DEFENDANT: Yes.

THE COURT: Okay.

(Defendant exits).

THE COURT: I prefer you not ask questions here at this stage. If there's something real important you have to say, just say, Judge -- I'll put the person out in the hallway. If the ruling is clear one way or the

Lynda A. Castellano, SCR